IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Phillip S. Figa

Civil Action No. 04-cv-00687-PSF-BNB

MARY JO LAIRD,

      Plaintiff,

v.

GUNNISON COUNTY, acting through
THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF GUNNISON;
THE BOARD OF TRUSTEES FOR THE GUNNISON COUNTY PUBLIC LIBRARY;
JOHN DEVORE, and
PEGGY MARTIN, in their individual capacities,

      Defendants.

---

## ORDER ON PENDING MOTIONS

---

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. # 89), filed on May 1, 2006, together with a Memorandum Brief in Support of Motion (Dkt. # 90) accompanied by Exhibits A through C ("Defendants' Motion")[1], and Plaintiff's Motion for Partial Summary Judgment (Dkt. # 93), filed May 5, 2006, accompanied by Exhibits 1 through 10 ("Plaintiff's Motion").

Plaintiff filed her response ("Plaintiff's Response") to the Defendants' Motion on May 23, 2006 (Dkt. # 96), together with Exhibits numbered 1 through 12.[2] Defendants

---

[1] Page citations in this Order to issues and arguments in Defendants' Motion refer to those pages of their Memorandum Brief.

[2] Exhibits 1 through 12 attached to Plaintiff's Response include duplicates of Exhibits 1 through 10 attached to Plaintiff's Motion, plus two additional exhibits. However, not all the duplicate exhibits carry the same exhibit numbers. Where possible, this Order will refer to the exhibits attached to Plaintiff's Response rather than to her motion.

filed a reply brief in further support of their motion on June 7, 2006 (Dkt. # 103).

Defendants filed their response to plaintiff's motion for partial summary judgment (Dkt.

# 101) on May 30, 2006, together with Exhibits D through F (Defendants' Response).

Plaintiff filed her reply in support of her motion for partial summary judgment (Dkt.

# 104) on June 14, 2006.

A Final Pretrial Order ("Final PTO") was entered on August 1, 2006 (Dkt. # 107).

By Order entered September 6, 2006 (Dkt # 115), the case was set for a five-day trial

to a jury commencing January 22, 2007.  The motions are fully briefed and ripe for

determination. The Court has determined that a hearing will not materially assist the

Court.

## I.    BACKGROUND

Plaintiff Mary Jo Laird was first employed in 1988 by Defendant Gunnison

County as an assistant librarian at the Crested Butte branch of the Gunnison County

library.  In approximately 1993, she was promoted to Branch Librarian (Final PTO,

Stipulations, ¶ 2).  On or about September 10, 2002, plaintiff met with Defendant Peggy

Martin, the Gunnison County Library Director, and was advised that her position as

librarian "was being eliminated due to budgetary constraints."  (Laird Depo., Exhibit B

to Defendants' Motion, at 134-37).  By letter dated September 18, 2002, Defendant

Martin informed plaintiff that the position of Branch Librarian would "be eliminated as of

September 30, 2002" and her services "will no longer be required after that date."

(Exhibit 8 to Plaintiff's Response).  By letter dated September 25, 2002, plaintiff notified

Defendant John DeVore, County Manager of Gunnison County, that she was

requesting "a hearing to appeal the termination of [her] position as branch librarian."

(Exhibit 12 to Plaintiff's Response). By letter dated September 30, 2002, Mr. DeVore responded to plaintiff's letter denying her request for a hearing and stating, in pertinent part, that plaintiff's situation falls "within the purview of the 'Reduction In Work Force' section of the Gunnison County Personnel Policies," and "that all County Policies have been followed." (Exhibit 11 to Plaintiff's Response). Although not expressly stated in DeVore's letter, the county personnel policies provide for a hearing for any "employee who desires to appeal a dismissal." The policies, however, define "dismissal" differently than a "layoff" and do not provide for a hearing in connection with a layoff. *See* Exhibit C to Defendant's Motion, Excerpts from Personnel Policies, attached to Affidavit of Deborah Moore, at 44, 58-59.[3] Plaintiff asserts that the defendants denied her right to appeal and failed to appoint a hearing officer as required by the personnel policies (Third Amended Complaint, ¶ 14).

## II.   PLAINTIFF'S COMPLAINT

Plaintiff's Third Amended Complaint, filed with leave of the Court on November 14, 2005 (Dkt. # 63), alleges five claims for relief against Defendants Gunnison County (the "County"), the Board of County Commissioners of the County of Gunnison (the "Board"), the Board of Trustees for the Gunnison County Public Library (the "Trustees"), John DeVore and Peggy Martin. The First Claim for Relief alleges a

---

[3] Plaintiff has also attached excerpts from the county "Personnel Policies" as Exhibit 6 to Plaintiff's Response and as Exhibit 5 to Plaintiff's Motion, but plaintiff's excerpts do not contain page 58 of the policies where the definition of "dismissal" appears, although plaintiff does reference that definition in her Third Amended Complaint at 5. Conversely, the excerpts of the policies attached to Ms. Moore's affidavit do not contain all the pages in plaintiff's Exhibits 5 and 6. Thus, the Court will cite specifically to the pertinent exhibit when referencing the personnel policies.

deprivation of plaintiff's due process rights by all defendants in violation of 42 U.S.C. § 1983, including her "right to a hearing before an independent hearing office before such termination for cause becomes effective." (Third Amended Complaint, ¶ 18). The Second Claim for Relief alleges a conspiracy by all defendants to deprive plaintiff of her due process rights in violation of 42 U.S.C. § 1985. The Third Claim for Relief alleges a violation of plaintiff's due process rights under the Colorado Constitution. The Fourth and Fifth Claims for Relief allege state law claims for willful breach of contract by the County, the Board, and the Trustees resulting from the alleged violation of the personnel policies (Fourth Claim for Relief) or, apparently in the alternative, for promissory estoppel due to plaintiff's alleged reliance on those policies (Fifth Claim for Relief).

## III.   DEFENDANTS' AND PLAINTIFF'S MOTIONS

Defendants' motion contends that all defendants are entitled to summary judgment as to all five of plaintiff's claims. They assert that the individual defendants are protected by qualified immunity as to the alleged violations of plaintiff's constitutional rights, that the County, the Board and the Trustees may not be held vicariously liable if the employees are not liable, and that the claims under the Colorado Constitution and state common law are subject to dismissal for failure to state a claim.

Plaintiff concedes in her response that her claims under 42 U.S.C. § 1985 (Second Claim for Relief) and her claim under the Colorado Constitution (Third Claim for Relief) are subject to dismissal (Plaintiff's Response at 2). Accordingly, those claims are dismissed with prejudice.

4

As for the remaining claims, plaintiff asserts that the personnel policies created an implied contract and contain an express covenant of good faith and fair dealing as to which the individual defendants are not entitled to qualified immunity (Plaintiff's Response at 17-29).  She acknowledges that the County may not be liable based on the doctrine of vicarious liability and can only be liable if the infliction of injury on plaintiff was pursuant to an official policy, but asserts that the County is liable because the acts of Defendant DeVore represented the "official policy" of the County (*id.* at 29-31).  Finally, she argues that disputed issues of fact preclude summary judgment as to her claim based on promissory estoppel (*id.* at 31-33).

Plaintiff further argues in her motion for partial summary judgment that she is entitled to summary judgment as to her First and Fourth Claims for Relief because the defendants denied her a right to a hearing despite her being dismissed for what she describes as "an inability to perform her job efficiently and effectively," which she claims constitutes a dismissal for cause (Plaintiff's Motion at 14-17).  Defendants dispute plaintiff's explanation of the facts and her interpretation of the personnel policies, and argue that summary judgment should only be entered in their favor (Defendants' Response).

## IV.    STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether a trial is necessary.  *White v. York Int'l Corp.,* 45 F.3d 357, 360 (10th Cir. 1995).  In other words, for the case to continue, "there must be evidence on which the jury could reasonably find for the plaintiff."  *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995), *cert. denied*, 516 U.S. 1160 (1996), quoting *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 252 (1986).  A court grants summary judgment for the moving party only where there is no genuine issue as to any material fact in the pleadings, depositions, answers to interrogatories, admissions and affidavits.  F.R.Civ.P. 56(c).  When applying this standard, a court must view the factual record in the light most favorable to the nonmovant.  *Applied Genetics Int'l., Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  However, "where the non moving party will bear the burden of proof at trial on a dispositive issue that party must go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment."  *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998) (internal quotation marks and citation omitted).

## V.   ANALYSIS

### A.   Applicable Law

There is no dispute that plaintiff was not employed pursuant to a written employment contract or any document that specified her period of employment.  The common law rule in Colorado is that an employee who is hired for an indefinite period of time is an "at will employee," one whose employment may be terminated by either party without cause or notice, and whose termination does not give rise to a cause of action.  *Continental Air Lines, Inc. v. Keenan*, 731 P.2d 708, 711 (Colo. 1987).  Under this rule alone, plaintiff would have no claim against the defendants.

However, the common law of "at will" terminations under Colorado law is modified somewhat in certain situations where the employer adopts a personnel manual that provides procedures for termination.  As the Court in *Keenan* explained, an employee may be entitled to relief under ordinary contract principles, as plaintiff seeks here, if she can demonstrate that in promulgating termination procedures the employer was making an offer of employment that the employee accepted.  *Id.* at 711. The *Keenan* case also held that an employee may enforce the termination procedures under a theory of promissory estoppel, *id.* at 712, as plaintiff here apparently seeks to do in the alternative.

In *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo. 1988), the Colorado Supreme Court explained in more detail its holding in *Keenan* that termination procedures may constitute a contract, stating:

> While an employer need not establish personnel policies or practices, where an employer chooses to establish such policies and practices and makes them known to its employees, the employment relationship is presumably enhanced.  The employer secures an orderly, cooperative and loyal work force, and the employee peace of mind associated with job security and the conviction that he will be treated fairly.  No pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the employer's policies and practices or that the employer may change them unilaterally.  It is enough that the employer chooses, presumably in its own interest, to create an environment in which the employee believes that, whatever the personnel policies and practices, they are established and official at any given time, purport to be fair, and are applied consistently and uniformly to each employee.  The employer has then created a situation "instinct with an obligation."

759 P.2d at 1348-49 (citation omitted).

7

With respect to the promissory estoppel approach set forth in *Keenan*, the

Colorado Supreme Court in *Churchey* explained that:

> termination procedures can be enforced if the employee can
> demonstrate that the employer should reasonably have
> expected the employee to consider the employee manual as
> a commitment from the employer to follow the termination
> procedures, that the employee reasonably relied on the
> termination procedures to his detriment, and that injustice
> can be avoided only by enforcement of the termination
> procedures.

759 P.2d at 1349 (citation and internal quotation marks omitted).

In *Adams County School Dist. No. 50 v. Dickey,* 791 P.2d 688 (Colo. 1990),

the Colorado Supreme Court applied aspects of the above analysis to the termination

of a public employee alleging not only a breach of contract and promissory estoppel,

but also a deprivation of the right to due process under the County's termination

procedures.  The Court held that under Colorado law an employee personnel handbook

may grant to a public employee a property interest in continued employment that

entitles the employee to the protections of the procedural due process guarantee of the

United States Constitution.  Citing to the United States Supreme Court decision in

*Board of Regents v. Roth*, 408 U.S. 564, 577 (1972), the court in *Dickey* further held

that for government employees "[t]o have a property interest in a benefit, a person

clearly must have more than an abstract need or desire for it.  He must have more than

a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement

to it." 791 P.2d at 694.

The Tenth Circuit has similarly held that whether a plaintiff facing termination

is entitled to due process depends on whether under applicable state law, he had a

"legitimate claim of entitlement" in continued employment, as opposed to a unilateral expectation or abstract need or desire for it.   *See Hatfield v. Board of County Com'rs*, 52 F.3d 858, 863 (10th Cir. 1995).

In the instant case, there is no dispute that Gunnison County had adopted personnel policies no later than 1989 (Defendants' Memorandum at 7, Statement of Undisputed Facts, ¶ 4; Plaintiff's Response at 5).   As noted above, portions of the personnel policies are attached to the affidavit of Ms. Deborah Moore, human resource coordinator for the County during the period June 1, 2002 through February 4, 2003, as well as to Plaintiff's Response and Plaintiff's Motion.   Pursuant to the above line of cases, the Court first considers plaintiff's contract and due process claims, and separately analyzes her promissory estoppel claim, based on the County's personnel policies.

### B.    Plaintiff's Contract and Due Process Claims

Defendants contend that the County's personnel policies do not create a property right which gave plaintiff a contractual or due process right of continued employment or a right to appeal upon being laid off (Defendants' Motion at 16).   Citing to plaintiff's deposition testimony, defendants argue that plaintiff cannot recall any language in the personnel policies on which she relied that she claims informed her that she would keep her job, nor did she recall that any particular procedure would be followed if she were terminated (*id*.).   But as plaintiff correctly points out, the *Churchey* decision expressly held in the context of a claim based on contract breach that no pre-employment negotiations need take place and the parties' minds need not meet on the subject; nor does it matter that the employee knows nothing of the particulars of the

9

employer's policies and practices or that the employer may change them unilaterally. Thus plaintiff's admitted lack of awareness does not preclude her contract or due process claims.  Moreover, even if plaintiff were not aware of the personnel policies applicability to her employment situation, the evidence nonetheless shows that defendants through Defendant DeVore intended to comply with those policies in connection with plaintiff's separation.  *See* Exhibit 11 to Plaintiff's Response.

On the other hand, notwithstanding the allegations in her Third Amended Complaint, plaintiff here does not now contend that she had an indefinite right of employment or that she could only be terminated for cause.  Rather, what she now claims is that she "had an implied contract with Gunnison, by virtue of the personnel policies, that she would not be terminated or demoted, or suffer an adverse employment action without being provided with the opportunity to appeal such action," and that the "existence of such contract turned her at-will employment into a constitutionally protected property right."  (Pretrial Order at 3-4).

Plaintiff, citing to provisions appearing at pages 38 and 44 of the County personnel policies (Exhibit 6 to Plaintiff's Response), argues that she had an implied contract "because [the County] promised an appeal process to [her] in the event she was dismissed or suffered an adverse employment action."  (Plaintiff's Response at 18).  The sections of the personnel policies identified by plaintiff in support of her argument are titled "Disciplinary Action."  Contrary to the argument in Plaintiff's Response, the Court finds no language in the appeals procedure that provides for a hearing in the event of any "adverse employment action."  Rather, the Appeal Procedure section provides as follows:

10

**13-1 Grounds.**  An employee may request a formal hearing by resorting to the formal appeal procedure only after receiving  written decision following the grievance procedure or receiving a written notice of dismissal.

Exhibit 5 to Plaintiff's Response at 44.

Plaintiff does not allege in her Third Amended Complaint that she was entitled to a hearing for having invoked the "grievance procedure."  Indeed, in quoting the above language in her Third Amended Complaint she omits by an ellipsis the reference to the right to a hearing following invocation of the grievance procedure (*see* Third Amended Complaint at 5).[4]  Thus, the only issue before the Court, as plaintiff appears to acknowledge, is whether plaintiff was entitled to an appeal process because she had received a "written notice of dismissal."  Plaintiff contends that she was dismissed "for cause," that her termination was a "disciplinary action," and therefore the letter from Defendant Martin dated September 18, 2002, although not expressly using the word "dismiss," was a written notice of dismissal as to which plaintiff was entitled to an appeal hearing (Plaintiff's Response at 19-20).

By contrast, defendants argue that the record here is devoid of any evidence that plaintiff was terminated for cause or dismissed from her position as that term is defined in the personnel policies, and therefore she was not entitled to an appeal (Defendant's Motion at 18-19).  Defendants state that the termination of plaintiff was a layoff, and not a dismissal, resulting from the creation of a new position of library

---

[4]   The Court notes that plaintiff's Verified Second Amended Complaint (Dkt. # 28), which was accepted for filing pursuant to an order entered by the Magistrate Judge on April 13, 2005 (Dkt. # 27), did allege that plaintiff was entitled to a hearing "as required by the grievance provisions of Section 12 of the employee handbook."  (Verified Second Amended Complaint, ¶ 17).  That allegation is conspicuously absent from plaintiff's Third Amended Complaint, as well as any reference to plaintiff having invoked the grievance procedure.

'branch manager" and a determination by Defendant Martin that the new position required an individual with a masters degree in library science, and an ability to run the branch library in an independent, autonomous and professional manner (*id.* at 5). A "layoff," not being a dismissal, triggers no procedural rights such as a hearing.

According to defendants, Defendant Martin had intended to add the new position without having any impact on the existing library positions, but ultimately there was not sufficient funding for the new position as well as the existing positions.  Ms. Martin ultimately made the decision "that the position held by plaintiff would need to be eliminated in order to fit the salary for the new position within the library budget." *Id.* at 5-6.  Although Defendants' Motion fails to cite to evidence of record to support this explanation, the excerpts from Defendant Martin's deposition attached to Plaintiff's Response do describe this version of the events leading up to plaintiff's separation from employment.  *See* Martin Depo., Exhibit 5 to Plaintiff's Response, at 42-48.

Citing to the same pages from Defendant Martin's deposition, plaintiff argues that the testimony supports her assertion that she was dismissed for cause.  Plaintiff asserts that she "was separated from her employment with Gunnison because she had an inability to efficiently and effectively perform her job given the increased and/or higher levels of service demanded by the community," and that her "inability to efficiently and effectively meet the demands of the community necessitated her dismissal from the job and replacement by someone who could adequately and independently provide those services without the need for Defendant Martin's assistance, which she could no longer provide to Plaintiff given the increased demands on her own time."  (Plaintiff's Response at 20.)

The problem with plaintiff's "argument" is that a dismissal that gives rise to the appeals procedure described in the personnel policies is defined in the definitions section of the personnel policies as "an involuntary separation for cause from County employment." (Exhibit C to Defendants' Motion at 58). The term "cause" is not defined in the "definitions" section. However, the personnel policies elsewhere explain that "cause" refers to cause for disciplinary action, as plaintiff has noted her response. *Id.* at 38. The policies state that "cause" for disciplinary action shall include acts involving unsatisfactory work performance or conduct prejudicial to the public interest (*id.*). In addition, the section on disciplinary action lists 25 examples of conduct that constitute cause for disciplinary action. None of these grounds for disciplinary action were asserted by defendants to be the reason for plaintiff's separation for employment. Although plaintiff describes her separation as resulting from an "inability to efficiently and effectively perform her job," which sounds like one of the criteria for disciplinary action set forth at page 38 of the personnel policies ("failure to perform assigned duties in an efficient and effective manner"), defendants have not asserted that plaintiff's termination resulted from a "failure" to perform her duties adequately. Accordingly, the Court cannot find that plaintiff has come forward with evidence of record to support a conclusion that she was dismissed for cause within the meaning of the personnel policies.

Plaintiff argues, nonetheless, that defendants's assertion that plaintiff was subject to a "layoff" or "reduction in force" is pretextual, when in fact the action was taken for the purpose of avoiding a hearing the defendants would otherwise have been required to provide plaintiff (Plaintiff's Response at 4). Pretext, in the context of employment discrimination, can be shown by such weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted reasons. *See e.g. Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997).

An employee generally may also show that the employer's proffered reason for an employment action is pretextual by demonstrating that the stated reason is "unworthy of belief." *See e.g. Simms v. Oklahoma ex rel. Dept. of Mental Health and Substance Abuse Services,* 165 F.3d 1321, 1328 (10th Cir.), *cert. denied,* 528 U.S. 815 (1999). As the Tenth Circuit stated in *Simms*, evidence of pretext may include falsifying or manipulating hiring criteria, the use of subjective criteria intended to eliminate the plaintiff, or "disturbing procedural irregularities" in the employer's practices. *Id.* However, mere conjecture that the employer's explanation is a pretext for intentional discrimination, or a different reason, is an insufficient basis for denial of summary judgment. *See Morgan, supra*, 108 F.3d at 1323. While these definitions of "pretext" typically arise in the context of employment discrimination cases brought under Title VII, the pretext analysis applies equally to a case brought under Section 1983 where the employee asserts pretextual reasons for her termination amount to an alleged violation of her due process rights. *See e.g. Burns v. Board of County Com'rs of Jackson County*, 330 F.3d 1275, 1283 (10th Cir. 2003).

Here, however, plaintiff has come forward with no evidence, other than her own conjecture, that defendants' explanation that the creation of the Branch Manger position with the job requirement of a master's degree for the intended purpose of improving the performance of the branch library is "unworthy of belief," or was undertaken for the subjective purpose of getting rid of plaintiff as the branch librarian.

14

Rather, plaintiff argues, defendants' explanation that plaintiff was subject to a "layoff" is "implausible" because the circumstances of plaintiff's separation do not fit the definition of a "layoff" as that term is defined in the personnel policies.  Plaintiff also argues that what actually occurred here was a "reclassification" of her position as branch librarian, not carried out in accordance with the personnel policies, thus indicating "procedural irregularities" giving rise to a showing of pretext (Plaintiff's Response at 21-23).

Plaintiff is correct that the personnel policies define layoff as a "non-disciplinary separation of an employee from the County because of lack of work, non-availability of funds, abolishment of a position or reduction in force."  Exhibit 6 to Plaintiff's Response at 59.  However, defendants stated to plaintiff at the time of her termination that her position was eliminated (*see* Exhibit 8 to Plaintiff's Response) and have asserted without factual contradiction through Defendant Martin's deposition testimony that this was due to a lack of funding.  Such a situation appears to satisfy the personnel policies' definition of a "layoff," an employer action as to which there is no right of appeal under those policies.

Plaintiff cites to other testimony from Defendants DeVore and Martin that, she argues, seems to show that there was no "lack of work" as included in the definition of "layoff" (Plaintiff's Response at 21-22).  But even if that is what such testimony stated, a proposition this Court does not necessarily accept, the other conditions giving rise to a "layoff" as defined in the personnel policies are met here.  There is no serious dispute that the defendants created a new position of Library Branch Manager which, due to insufficient funding for two positions, resulted in the elimination of the branch librarian position held by plaintiff.  These circumstances meet the definition of "layoff."

15

Plaintiff also suggests that her position was not truly eliminated, but rather that it "merely matriculated" into a position for which plaintiff could not qualify because she lacked the requisite formal education (*id.* at 22).  But this semantic argument does not prove anything unless plaintiff can show that the position qualifications were manipulated for the purpose of wrongfully excluding plaintiff, a showing she does not attempt to make.  While she suggests that the County could have considered her length of service in establishing criteria for the new position (Plaintiff's Response at 25), or could have accepted her experience as the equivalent of a master's degree (Plaintiff's Motion at 2-3), as stated in *Simms, supra*, it is not the role of a court in reviewing hiring decisions to determine which applicant should have been hired or to pass judgment upon an employer's employment decisions, but only to determine if the employment decisions were unlawful.  165 F.3d at 1330.

Plaintiff also argues, citing to another definition appearing in the definitions section of the personnel policies, that these circumstances show that her job was "reclassified," rather than eliminated (Plaintiff's Response at 21).  "Reclassification" is defined in the policies as occurring "[w]hen the position in which an employee is classified is determined to be inappropriate and the employee is placed (reclassified) in a position, either new or existing, which more accurately defines the work the employee is performing."  Exhibit 6 to Plaintiff's Response at 59.  Elsewhere the personnel policies set forth the procedures for effecting reclassification of positions (*id.* at 11), providing, in pertinent part according to plaintiff, that no reclassification shall be proposed solely for the purpose of effecting a pay grade change or promoting or demoting an employee (Plaintiff's Response at 21).

The Court does not find this argument availing to plaintiff's claims here.  First, there is no evidence that plaintiff's position was "reclassified" as that term is defined in the personnel policies.  Rather, what occurred, as Defendant Martin testified without contrary evidence, was the creation (and classification) of a new position of Branch Manager (Martin Depo., Exhibit 5 to Plaintiff's Response, at 46-48).  Although Defendant DeVore did use the term "reclassification of the position in Crested Butte" and "reclassified the position" in his testimony describing the events, it is clear from his testimony as a whole that he was describing Ms. Martin's actions as the creation of a new position of Branch Manager.  *See* DeVore Depo., Exhibit 3 to Plaintiff's Response, at 8-9; 16-17).  Moreover, even if plaintiff were correct that the position of branch librarian was "reclassified" rather than eliminated, there is no provision in the personnel policies that provides an employee with a right to a hearing or appeal over a "reclassification" of a position, even or particularly by one who claims to have been terminated as a result.

In summary, it is apparent that the intent of the County's personnel policies in providing a right of appeal applies only to cases where an employee is dismissed for cause pursuant to a written notice of dismissal that sets forth grounds for the dismissal (or where the employee files a written grievance that is denied).  The purpose of such appeal, or hearing, is obviously to test the stated factual grounds for the employer's action.  In a case such this one, where the employer has made a policy decision to create a new position requiring a higher level of responsibility and a master's degree, no purpose would be served by an appeal and hearing, for it is not within the employee's right to challenge the wisdom of the employer's decision, nor is it for this Court to review the prudence of such a decision.

17

As noted, had plaintiff come forward with evidence that the employment decision had been made with a discriminatory intent in mind, or for the express purpose of hurting plaintiff, or that the employment criteria had been manipulated or falsified to preclude plaintiff from the position, this might be a different case.  But plaintiff herself has testified that she had no evidence to support a belief that she was the victim of age discrimination, or that Defendant DeVore "had it out for" her when he denied her appeal, or that Defendant Martin was not telling the truth about creating a new position and the budget would not allow for two positions (Laird Depo., Exhibit B to Defendants' Motion at 137, 175-76).  Rather, what bothered plaintiff was that she felt that "what happened was very unjust" as she had worked for the library for a long time, that it was "unfair" that she wasn't included in the process, and that she thought if she could have an appeal "we could iron it out."  (*Id.* at 174-75).  Plaintiff also points to an email from an outside attorney to Defendant Martin, suggesting that "it would be better to eliminate a less senior person."  (Plaintiff's Response at 25; Exhibit 10 thereto).

While plaintiff's opinion and argument may have validity in terms of what constitutes considerate or sympathetic employer conduct, it does not provide a factual basis for claims of denial of due process or breach of an employment agreement. As the court in *Dickey*, *supra*, stated "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  791 P.2d at 694.  Here, since the Court does not find that the personnel policies required the appeal or hearing that plaintiff claims, there is no deprivation of an entitlement giving rise to a deprivation of due process nor a breach of an employment agreement.

As the plaintiff did not have an entitlement to a hearing, the individual defendants DeVore and Martin cannot be liable for a violation of her constitutional rights and thus they are entitled to summary judgment on plaintiff's First Claim For Relief asserted against them.  Because the individuals did not cause a deprivation of constitutional rights or a breach of contract with plaintiff, the County, the Board and the Trustees cannot be held vicariously liable for a deprivation of constitutional rights or a breach of contract, so that they are entitled to summary judgment on plaintiff's First and Fourth Claims for Relief asserted against them.

Conversely, Plaintiffs Motion for Partial Summary Judgment on the First and Fourth Claims for Relief must be denied, for the reasons set forth above, as the arguments made in her motion are the same as made in her opposition to the Defendants' Motion.

### C.      Plaintiff's Promissory Estoppel Claims

As set forth above, in order for plaintiff to establish this state law claim she must show that she reasonably relied on the dismissal or appeal and hearing procedures to her detriment. *Churchey, supra*, 759 P.2d at 1349.  Here, plaintiff cannot make such a showing as she testified that she had no recollection of any language in the personnel policies on which she relied as a condition of her employment with the County or on which she relied to refrain from seeking other employment (Laird Depo., Exhibit B to Defendants' Motion, at 74-77).  Moreover, as for the policies on which plaintiff claims she relied, namely that she would retain her job so long as she performed satisfactorily (Plaintiff's Response at 32-33), they do not provide for the appeal and hearing she now claims to have been entitled to, any abstract reliance on such a possibility is not

reasonable given the language of the personnel policies.  Accordingly, defendants are also entitled to summary judgment on plaintiff's Fifth Claim For Relief.

**CONCLUSION**

Defendants' Motion for Summary Judgment (Dkt. # 89), filed on May 1, 2006, is GRANTED in its entirety and all of plaintiff's claims against all defendants are DISMISSED WITH PREJUDICE.

Plaintiff's Motion for Partial Summary Judgment (Dkt. # 93), filed May 5, 2006, is DENIED in its entirety.

The Clerk of the Court is directed to enter judgment for all defendants as to all of plaintiff's claims, together with costs as allowed by Rule 54(d), F.R.Civ.P.

DATED:  January 10, 2007

BY THE COURT:

*s/ Phillip S. Figa*

_____
Phillip S. Figa
United States District Judge